KRAMLICH, Appellant, *v.* TULLOCK, Sheriff, Respondent.

(No. 6,435.)

(Submitted April 1, 1929. Decided May 4, 1929.)

[277 Pac. 411.]

602

*Mr. E. K. Cheadle,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Belden & DeKalb, Mr. Merle C. Groene* and *Mr. Ralph J. Anderson,* for Respondent, submitted a brief; *Mr. Anderson* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action arose out of the following facts: Plaintiff Anna Kramlich had leased land from Jackson, who was to receive one-third of the crops grown thereon, plaintiff to retain the other two-thirds. Plaintiff had mortgaged her share to Slater. Wheat grown upon the land was shipped to market in the name of Jackson who received the proceeds. Plaintiff's husband, J. F. Kramlich, owed Bennett and Bennett sued him. Bennett, in aid of his suit got out a writ of attachment, and on January 24, 1927, through the sheriff, attached "all the right, title and interest of the said defendant in the proceeds of a shipment of wheat" in the hands of Jackson. On the next day Jackson and Slater executed an undertaking for the release of the attachment, in which they agreed that "in case the plaintiff recovers judgment in said action and said attachment is not dissolved, then the said defendant will, on demand, redeliver to the proper officers such attached property, or in default of such delivery, that the said defendant, and we, as sureties, will pay or cause to be paid to the said plaintiff, the full value of the property so released, not exceeding the sum of $600." Prior to delivering the undertaking to the sheriff, plaintiff and her husband agreed that Jackson and Slater might retain $600 to indemnify them upon the undertaking. On the day the undertaking was given, plaintiff filed a third-party claim which reads, except for preliminary matter, as follows: "That she is the owner of the

following described property upon which attachment, in the above entitled action, was levied on the 24th day of January, 1927, to-wit: All the right, title and interest of the said defendant in the proceeds of a shipment of wheat now in the hands of George Jackson of Lewistown, Montana; the same being for the proceeds of wheat owned by me and grown by me in the season of 1926, on premises belonging to George Jackson in Fergus county, Montana." Afterwards Bennett got judgment against J. F. Kramlich and demanded that Jackson and Slater deliver to the sheriff, to be applied on the judgment, the property attached. Slater thereupon, on March 30, 1927, gave the sheriff a check for $600, and the sheriff gave him a receipt which reads: "James L. Bennett, Plaintiff, vs. James F. Kramlich, Defendant. Received this 30th day of March, 1927, from W. A. Slater, check in the sum of $600.00 in the above entitled action." A few days later plaintiff commenced this suit.

1. The complaint is grounded upon the claim and delivery statute. Plaintiff alleged that on or about the twenty-fourth day of January, 1927, she "was and now is the owner and entitled to the possession of the following described personal property, to-wit: $600.00 lawful money of the United States of America"; that on or about the twenty-fourth day of January, 1927, the sheriff, defendant, without plaintiff's consent, unlawfully took and came into the possession of the said personal property, and still retains possession of the same; that on the twenty-fifth day of January, she demanded of the defendant possession thereof, but the defendant refused and still refuses to deliver the same to the plaintiff; "that the defendant still unlawfully withholds and detains the said personal property from this plaintiff, to her damage in the sum of $600.00, the value of the said property"; that in addition the plaintiff has been damaged by the unlawful detention in the further sum of $75; that the said personal property had not been taken for any tax, assessment or fine, or seized under execution or attachment against the property of the plaintiff.

The answer consisted first, of a general denial, and second, of an attempt to justify under the writ of attachment in the action of *Bennett* v. *Kramlich*. A reply was filed denying the affirmative allegations in the answer.

When this cause came on for trial in the district court the defendant objected to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitute a cause of action. The court reserved its ruling upon the objection, as it did repeatedly upon objections offered by the defendant during the presentation of plaintiff's case. It likewise reserved its ruling upon defendant's motion for a nonsuit. At the close of all the evidence defendant moved for judgment. The court, sitting without a jury, took the motion under advisement. Finally it ordered judgment for defendant. Hence this appeal.

In the main we borrowed our statutes relating to claim ▉▉▉ and delivery from California. The action, called in the Code of Civil Procedure an action to recover the possession of personal property, "is the lineal descendant of one of the early remedies given by the common law for the purpose of recovering the possession of specific chattels and known as replevin. The scope of its application has been greatly enlarged in modern times, but the essential object of the action remains the same, namely, to enforce the plaintiff's right to the present possession of chattels as against a defendant who unlawfully detains them," and, under our statute to recover their value, if possession cannot be had, together with damages for the detention. (5 Cal. Jur. 155.)

"A person entitled to the immediate possession of specific personal property may recover the same in the manner provided by the Code of Civil Procedure," and "any person having the possession or control of a particular article of personal property, of which he is not the owner, may be compelled specifically to deliver it to the person entitled to its immediate possession." (Secs. 8712, 8713, Rev. Codes 1921.)

The distinction between an action for the possession of personal property, and one to recover damages for its wrongful conversion,—although conversion, or trover, under the fact conditions here would be subject to the same objections which apply to the action for claim and delivery, or replevin (26 R. C. L. 1101, 1102; *Cooke* v. *Bryant,* 103 Ga. 727, 30 S. E. 435; *Salem Traction Co.* v. *Anson,* 41 Or. 562, 67 Pac. 1015, 69 Pac. 675; *Larson* v. *Dawson,* 24 R. I. 317, 96 Am. St. Rep. 716, 53 Atl. 93; *Kerwin* v. *Balhatchett,* 147 Ill. App. 561),—"is just as broad as that between the common law actions for detinue and trover. One lies for the recovery of the property itself, with damages for the wrongful detention of it, the other for the recovery of damages for the wrongful conversion of it. In replevin plaintiff never ceases to claim the property as his own, but seeks to obtain it rather than its value. * * * In trover, on the other hand, plaintiff concedes a change of title by the act of conversion and recognizes ownership in defendant. In that case damages for detention are waived." (5 Cal. Jur. 158, 159; *Tucker* v. *Hagerty,* 37 Cal. App. 789, 174 Pac. 908; *Farrar* v. *Eash,* 5 Ind. App. 238, 31 N. E. 1125.)

As this action is, in its very nature, adapted to the recovery of the possession of specific personal property only, the property sought to be recovered must exist in some concrete or tangible form capable of identification and seizure. (5 Cal. Jur. 159.) For this reason "money is not subject to an action of claim and delivery unless it is marked or designated in some manner so as to make it capable of identification, as, for instance, where it is sealed in a bag." (5 Cal. Jur. 160.) In other words, the action lies only for the recovery of specific money, not money generally. "The rule is well settled that replevin will not lie for money incapable of specific identification." (*Spear* v. *Arkansas National Bank,* 111 Ark. 29, Ann. Cas. 1916A, 735, 163 S. W. 508, and note; Cobbey on Replevin, 2d ed., sec. 72; 34 Cyc. 1359.) It will not lie to recover the proceeds of a draft or check deposited in the usual course of business. (*Spear* v. *Arkansas National Bank,* supra.)

There seems to be no disagreement among the authorities on these points.

What plaintiff really desired to obtain in this action was not a judgment for the specific money but for the proceeds of the wheat sought to be attached by Bennett in the action against her husband, and this is shown by her third-party claim. She never made any other demand upon the sheriff. The sheriff did not receive any money from Slater; he received a check. What became of the check, whether the sheriff obtained the cash upon it or deposited it to his account, the record does not disclose. From what the record discloses it would seem that plaintiff's proper action, pleading the facts "in ordinary and concise language" was one against the ██ sheriff for money had and received. It must not be forgotten that while under the code system of pleading the common-law distinctions of form of actions have been abolished, the substantial rights remain unchanged (3 Cal. Jur. 375); the reasons underlying the causes of action remain the same and plaintiff may not recover beyond the case stated by him in his complaint. (*Glass* v. *Basin & Bay State Min. Co.,* 31 Mont. 21, 77 Pac. 302; *Butala* v. *Union Electric Co.,* 70 Mont. 580, 226 Pac. 899; 3 Cal. Jur. 375.)

The complaint does not state a cause of action.

2. But aside from the pleadings it seems clear that the █ court's decision is justified. Why, if plaintiff was the owner of two-thirds of the proceeds of the wheat, subject only to the Slater mortgage, did she give her approval, and that she did so is beyond doubt, to the execution of the undertaking signed by Jackson and Slater for the release of the attachment upon "the right, title and interest of the defendant"—J. F. Kramlich—"in a shipment of wheat," etc.? And why did she consent that Jackson and Slater should hold $600 to protect them against their liability upon the undertaking? These sureties agreed that in case Bennett got judgment against J. F. Kramlich they would redeliver the attached property to the sheriff, or in default thereof, they would pay

or cause to be paid to the plaintiff Bennett the full value of the property released not exceeding $600. Bennett having judgment against Kramlich for $713.57, Jackson and Slater were obligated to pay him $600 and in consequence Slater and Jackson gave the check for $600 to the sheriff. Having consented that the sureties should hold the $600 to protect them, she is not in a position to complain of that to which she consented. If Jackson and Slater had refused to pay the sum which they were obligated to pay by the terms of the bond, and judgment had gone against them upon a suit brought by Bennett against them, plaintiff could not have recovered the $600 from them. Jackson and Slater confessed their liability upon the undertaking by paying to the sheriff without condition, and in good faith undoubtedly, the sum the undertaking called for; so there is no question of their having no defense to a suit brought upon the undertaking Thus by direction the same result was reached as if it had been reached by indirection, i. e., a suit by Bennett on the undertaking resulting in Jackson and Slater paying to Bennett $600 and being entitled to the $600 they held by plaintiff's consent.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, Concurring Specially: I agree with the result announced in the foregoing opinion but not with all that is stated in it. In so far as the opinion holds that the complaint does not state facts sufficient to constitute a cause of action, I disagree with it.

It is true, as stated therein, that plaintiff's complaint is based upon the claim and delivery statute. Defendant did not demur to the complaint, either generally or specially. The object of definiteness in a complaint is to notify the defendant of the facts the pleader expects to prove so as to enable him to prepare his defense, and so that any judgment obtained may be pleaded as a bar to another action involving the same sub-

ject matter (*Kozasa* v. *Northern Pac. Ry. Co.*, 61 Mont. 233, 201 Pac. 682; *Smallhorn* v. *Freeman*, 61 Mont. 137, 201 Pac. 567), and omitted allegations in a complaint may be supplied by the answer. (*Schauer* v. *Morgan*, 67 Mont. 455, 216 Pac. 347.)

The objection to the complaint in this action for insufficient description or identification of the money sued for, if not waived by the defendant for failure to demur specially (sec. 9136, Rev. Codes 1921), was cured by the allegations of the answer. The answer alleged the circumstances under which defendant obtained the possession of the $600 demanded in the complaint, and alleged that "this defendant holds the said sum of money for the purpose of applying it upon the judgment obtained" in a certain action. It is worthy of note, also, that defendant's witness Linn, a deputy sheriff, testified as follows: "Q. Is the money still in the sheriff's office, Mr. Linn? * * * A. Yes, it is in the possession of the sheriff."

The issues raised by the answer were those pertaining only to the right of possession of the money in question. The case is identical in principle with that of *Eaton* v. *Blood*, 201 Iowa, 834, 44 A. L. R. 1516, 208 N. W. 508, where the supreme court of Iowa held that replevin was a proper action to recover a bank account where defendant in the answer admitted possession of the property. The court in that case said: "Defendant contends that replevin will not lie. Replevin for a bank account is somewhat novel, though such cases have not been altogether unknown to the trial courts. The savings account sought to be recovered here may be construed to include the pass-book. It was admitted in the answer that the defendant received and has in his possession the property described in the petition. The defense is a denial that plaintiff is entitled to possession. The order of the probate court previously referred to was not such a judgment or process as would preclude the plaintiff from maintaining an action of replevin. It results from the foregoing discussion that the question pre-

sented is one of the right of possession, and that plaintiff is entitled to it."

Furthermore, so far as this case is concerned, the complaint states facts sufficient to constitute a cause of action for conversion. Defendant treated it as such throughout the trial. His counsel in their brief make the statement: "The complaint is a straight action in conversion." An action lies for the conversion of money if sufficiently described. Thus it has been held that a complaint describing money as "the money obtained by defendant for the sale of, to-wit: plaintiff's three-quarters interest in, to-wit: 15 bales of cotton," was not demurrable for insufficient description of the money. (*Howton* v. *Mathias*, 197 Ala. 457, 73 South. 92.) And the supreme court of Wisconsin has held that the money of one person converted by, and mingled with that of, another may be recovered in conversion. (*Regas* v. *Helios*, 176 Wis. 56, 186 N. W. 165.) A complaint for the conversion of "$1,850 in cash" has been held a sufficient description of the property. (*Dunham* v. *Cox*, 81 Conn. 268, 70 Atl. 1033.)

In *Ramirez* v. *Main*, 11 Ariz. 43, 89 Pac. 508, it was held that a complaint to recover "$5,950, money of the Republic of Mexico," was good as against a general demurrer and that the objection, if good, should have been presented by special demurrer.

In *Williams* v. *Williams*, 112 Me. 21, Ann. Cas. 1916D, 928, 90 Atl. 500, the complaint filed in 1910 was in conversion to recover $18,750, or the one-third of $56,250, which had been delivered to defendant in 1900 for the purpose of purchasing certain property. The court, in holding that trover was maintainable, said: "The defendant has argued, under his motion, that this action of trover is not maintainable, because the identical money which came into the defendant's hands from the sale of the quarry in 1900 is not specified. The identical money could not be specified in this case. The defendant deposited the money received in his own name on interest with the authority of the testator. It could not there-

612

after be identified. Money may be the subject of an action of trover, and in the declaration for the alleged conversion of money it is not necessary to set out the money verbatim, a description of it in general terms being sufficient. All that is required we think is that the property should be described with as much reasonable certainty as the nature of the case will permit so that it may be known what property is meant, and that the defendant may be protected against another suit for the same cause of action."

In this state the common-law forms of action have been abolished and there is but one form of civil action. (Const., Art. VIII, sec. 28; sec. 9008, Rev. Codes 1921.) While it is true, as stated in the majority opinion, that the reasons underlying the causes of action remain the same and that plaintiff may not recover beyond the case stated by him in his complaint; yet it is immaterial what designation plaintiff may have given to his cause of actions (*Hillyer* v. *Eggers,* 32 Cal. App. 764, 164 Pac. 27.)

The courts, under our Practice Act, should look to the substance, rather than the form, of the action. (1 C. J. 1008.) Hence, while I agree with most of the abstract principles of law announced in the majority opinion, many of them have no application to the facts presented in this case, and in my opinion the objection to the introduction of testimony upon the ground that the complaint does not state facts sufficient to constitute a cause of action, under the pleadings here presented, was without merit.

Rehearing denied May 22, 1929.